

# Memo: Unity Health Care, Inc.
Pharmacy Services Department
1900 Massachusetts Ave., SE
Washington DC 20003


**COPY**

UNITY-0128

**To:** Michelle Madison
Chief Program Officer

**From:** Roderick Nwokorie, MS, RPh
Director Of Pharmacy Services

**Date:** 6/18/02

**Subject:** Report of Loss of Controlled Substances at the Unity Health Care Pharmacy at D.C General

    On Friday June 14, 2000, Edward Ayanbiola- the pharmacist in charge at D.C General reported to me in writing about the loss of controlled substance –Oxycodone /acetaminophen (Percocet) 5/325mg. He reported a loss of 257 tablets, which amounts to a significant loss. He wrote this report after an intensive effort to reconcile the counts based on the dispensing records.
    By law an inventory of the controlled substances has to be taken every month. According to him he took the controlled substances inventory of all the controlled substances including that of the Percocet at the end of April 2000, and found the counts to be correct. After that, there were instances of discrepancies on the physical count until the inventory of May during which there was a shortage in the amount reported.
    According to the Controlled Substances Act and other State Laws, any significant loss of controlled substances must be reported immediately upon discovery to the nearest DEA filed office and the local police of the area. The pharmacy must also report such loss by completing form –106. I have completed this form but have not submitted it to the DEA yet. However, according to the regulations I reported it to the local police who came and took statements from me. I told the police officer that we would review all our records and the prescriptions to see of any filled prescriptions had not been recorded.
    Immediately after I received this report from Edward Ayanbiola on 6/14/02 I called you to report the incident and to tell you the required steps to take in handling an incident of loss of controlled substance. You told me that you would get back to me on Monday 6/17/01. When I came to work on Monday 6/17/01 I called and left a message on your voice mail and requested you get back to me. When I did not hear from you by noon, I called to report the loss to the local police as required bylaw.



Meanwhile I have directed the pharmacists to retrieve all hard copies of all the prescriptions filled on this drug for the month of May to locate filled scripts that might not have been logged in the controlled substance book. This will require several manpower hours. I also need to print the record of the controlled substances filled within that period from the computer but because of the existing computer problems we presently face including inability to print reports because we have only one printer working here at D.C General (there are three other printers including a laser printer which can be used for this purpose but not connected) I am unable to do so.

 I have to make it clear that it is to the best interest of this organization that I report a loss of this magnitude as soon as possible. If I do not we may face the consequences of some or all the penalties under Section 402 and 403 of the Controlled Substance Act. These include the suspension of all Federal and State Controlled Substances licenses of all the Pharmacies, monetary fines and suspension of my own license to practice pharmacy because I am the representative agent of Unity Health Care for DEA licenses.

 When I came into work this morning I was immediately faced with computer issues at Hunt Place which is yet unresolved, I was also attending to staffing issues at Walker Jones and therefore I could not call you immediately to inform you of the steps I am taking regarding this issue. Someone from the pharmacy might have called you to report to you that a police officer came here yesterday on the issue of Narcotic loss, and possibly speculating on who was or was not responsible. I have not discussed this issue with any other staff except Mr. Ayanbiola who reported the incident to me and who is in charge. That some one has called to report to you that I spoke to a police officer other than me or whom I ask to call you shows the impact of the stage which has been set for the staff I am supposed to supervise to act on.

 To address the cause of this problem, I have to draw your attention to the report submitted by Edward and when the discrepancies stated. Also, I have to point out to you some of practice standard that might have resulted in such a loss. Helen Akonji- staff pharmacists who worked with Edward here within the period of loss failed to follow the procedure of handling controlled substance in the pharmacy. She left bottles of Percocet out in the open in the pharmacy, which Edward stated in his report. I personally found out about this on 5/29/02. On that day Edward was off and I provided coverage at Walker Jones in the morning hours. At 1:00pm when I came to D.C General pharmacy to relieve Ms. Akonji for lunch I found a bottle of Percocet out the prescriptions table. I immediately secured it and later advised her not to leave it out in the open. The next day 5/30/02, I had a meeting with Edward and Ms. Akonji on the handling and security of controlled substances in general and warned them not to leave Narcotics out in the open.

 Several other instances of unacceptable practice standard by Helen Akonji have surfaced since we started searching for the record of

UNITY-0129

missing controlled substances. On 5/23/02 Ms. Akonji filled prescriptions for a patient and after picking up his medication the patient honestly returned a bottle of Tylenol/Cod #3, # 50 which he found in his bag but belonged to another patient. On checking the record It was found that Ms. Akonji filled this prescription for the prescriptions for the patient and the Tylenol #3, but did not even sign the prescription or log it in the book. That of course amounted to serious medication error.

On 5/17/02 Helen Akonji was detailed to work at Congress Height pharmacy. On that day she filled a prescription for a patient for Xanax 0.25mg #30 (another controlled substance). The next day when the patient went to pick it up, it could not be found. The regular pharmacist Rahel Mersha had to fill another prescription on the same day for the patient. Ms. Mersha has further reported that Helen Akonji used her (Mersha) sign-on computer code to fill that prescription. That in itself amounted to fraud. O that same occasion she misplaced or lost the pharmacy keys that day. This came to my attention on 6/6/02 when Mr. Ayanbiola told her to work at Congress Heights on 6/7/02. When they could not find the keys to the pharmacy, she then reported that she left the keys on top of the safe instead of putting them back inside an envelope in the safe. I reported this to you and had the keys to that pharmacy replaced on 6/12/02.

In my evaluation of Helen Akonji for the 90 days probation I rated her marginally "fair" in her overall evaluation and recommendation for an extended introduction period because of her hard-to-fill position of a staff pharmacist.

I am seriously concerned with her practice standard and other work habits. If for any reason these issues are not addressed or overlooked we may face serious problems with the law, and patient's safety with her continued practice or a pharmacist in this organization. If the we are unable to reconcile this loss through identifying inaccurate recording or failure to record dispensed drug, the DEA may require us to present measures taken to prevent future losses of controlled substances. This may include removal of the pharmacists who may be responsible for or contributed to such loss

I have to caution against the direction the management and the supervision of the pharmacy operation is being taking to. Some staff members have been made to feel that they can have their ways by calling you at any time and by writing unfounded complaints and allegations against me or any other pharmacist placed in the position to supervise them.

In effect I feel alienated by some of the management decisions you have made above me or imposed on me regarding the operation of the pharmacy so far. Pharmacy practice like any other health care profession requires certain standards of management and practice. It requires substantial degree of leadership flexibility, i.e., overall leadership, direction, as well as administrative and technical supervision of the

UNITY-0130

pharmacy staff. The staff should comprise individuals who are dependable, knowledgeable, responsible and dedicated to the overall positive patient care outcomes. The staff must follow the organizational policies and procedures and other standard regulations guiding the profession.

While I will follow the policy and procedures of Unity Health Care in the management process, I will not give in to acts of intimidation through gang-ups, slanders, unfounded allegations and fabrications as perpetuated my some support staff here at D.C General.

cc:
Vincent Keane, CEO
Antoine Smith, Director of HR

UNITY-0131

Received   Aug-30-2004   12:46pm   From-202 293 8103   To-HAHN KYLE HOLLRAH LL   Page 014