IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HELENE AKONJI,

           Plaintiff,

v.

           Civil Action No: 05-2101 (JDB)

UNITY HEALTHCARE,

           Defendant.

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION:**

Pursuant to Fed.R.Civ.P. 56(c) the record should be examined in the light most favorable to the party opposing the motion, which is the Plaintiff, Helene Akonji. Dr. Akonji brings this action under Title VII of the Civil Rights Act of 1964 (CRA) and the District of Columbia Human Rights Act based sexual harassment and retaliation.

**BACKGROUND:**

Dr. Helene Akonji is a licensed pharmacist. Dr. Akonji was hired by Unity Healthcare as a staff pharmacist on February 6, 2002. Prior to working at Unity Healthcare as a permanent employee, she was assigned to Unity as a temporary employee through a temp agency. While working as a temporary employee, she met Roderick Nwokorie, Unity's Director of Pharmacy Services. Mr. Nwokorie encouraged Dr. Akonji to apply for a permanent position. Mr. Nwokorie interviewed Dr. Akonji and hired her as a permanent employee. During the interview, Mr. Nwokorie told Dr. Akonji that she had a beautiful face and he wanted her to become his assistant. (Exhibit #1: Akonji

Deposition Transcript pp. 32-34.) After she was hired, Mr. Nwokorie became Dr. Akonji's immediate supervisor. However, due to a vacancy, Dr. Akonji was initially assigned to Unity's Anacostia clinic instead of Unity's D.C. General clinic, where Mr. Nwokorie's office was located.

After working for two weeks, Dr. Akonji did not receive her paycheck on the day she was due to receive it. Dr. Akonji complained to Mr. Nwokorie about not receiving her paycheck. Mr. Nwokorie visited Dr. Akonji at the Anacostia clinic and offered her his own money. Dr. Akonji refused Mr. Nwokorie's offer with the expectation that she would promptly receive her paycheck.

However, another two weeks passed and Dr. Akonji had not received her initial paycheck or the paycheck that was currently due. Once again, Dr. Akonji complained to Mr. Nwokorie.

Mr. Nwokorie visited Dr. Akonji at the Anacostia clinic during the break period around 12 o'clock noon. No one else was in the pharmacy except Dr. Akonji. Dr. Akonji's assistant was on her lunch break.

Mr. Nwokorie offered Dr. Akonji $500 and she accepted it because she had not received a paycheck in over a month. Suddenly, Mr. Nwokorie held Dr. Akonji in a firm hug, grabbed her buttock, and attempted to kiss her. Dr. Akonji struggled to get away from Mr. Nwokorie and made it clear that she was not interested in having a relationship with him. Mr. Nwokorie backed away. Dr. Akonji describes the encounter at her deposition:

"…he went on onto hugging me, hold me very firm, try to kiss me, hug me on my buttocks, push me to the wall. And I was trying to push him away from me – him

away from me, and had a very pungent smell of cigarette coming out of his mouth. And I told him I didn't want it. Then he withdrew back." (Exhibit # 1: Akonji Deposition Transcript pp. 21-24.)

Mr. Nwokorie began to visit Dr. Akonji at the Anacostia clinic during the break period on a regular basis. The visits were frequent enough for Dr. Akonji's assistant to become suspicious and asked the purpose of Mr. Nwokorie's visits.

Mr. Nwokorie told Dr. Akonji that he loved seeing her beautiful face. Within weeks, Mr. Nwokorie attempted to force himself on Dr. Akonji on two other occasions. Dr. Akonji described the incidents during her deposition:

"So he came. When he came and opened the door, the first thing, again, he just grabbed me and hugged me close to him. He hugged me again. And this time it was a little short because I was shocked. So when he hugged me, I kind of pushed him away and he said, you know, oh, come on, you know each time I want to hug you, you know, you're resisting; it is just a hug. It is just a hug. It doesn't hurt. Just give me a hug." (Exhibit # 1: Akonji Deposition Transcript pp. 42-44.)

"…when he was leaving now, he again tried to hug me, kiss me, grab me, held my butt again, and I kind of pushed him away again. And I told him, I don't like this. I told him that I don't like it." (Exhibit # 1: Akonji Deposition Transcript pp. 44-45.)

On May 7, 2002, Mr. Nwokorie received a written reprimand from Unity's Director of Human Resources, Dr. Antione D. Smith, for inappropriate conduct towards three other female employees. (Exhibit # 2: Nwokorie's Written Reprimand) The reprimand advised Mr. Nwokorie to "refrain from any communication with employees that can be construed as threatening, inappropriate or intimidating." Furthermore, Mr.

3

Nwokorie was ordered to take a Management Training course. Mr. Nwokorie acknowledged that he had been reprimanded for his treatment of three other female employees. (Exhibit # 3: Nwokorie Deposition Transcript pp. 27-31.)

On May 20, 2002, Mr. Nwokorie does a performance appraisal of Dr. Akonji. In the appraisal, Mr. Nwokorie says, "Employee has good clinical skills which can be an asset to the organization but has to show responsibility, dependability and interest in her job." (Exhibit # 4: Dr. Akonji's Performance Appraisal – May 20, 2002.) Mr. Nwokorie places a memorandum in Dr. Akonji's personnel file citing frequent tardiness and absenteeism. (Exhibit # 5: Memorandum for Frequent Tardiness and Absenteeism.) Furthermore, he recommends that Dr. Akonji's 90 day probationary period be extended for another 90 days. (Exhibit # 6: Extension of 90 day probationary period.)

In June 2002, Mr. Nwokorie transferred Dr. Akonji from the Anacostia clinic to the D.C. General clinic where his office was located. Mr. Nwokorie told Dr. Akonji that he wanted her to be closer to him.

In the morning when Dr. Akonji arrived at D.C. General, she would regularly see Mr. Nwokorie waiting for her in the parking lot. On one occasion, Mr. Nwokorie approached Dr. Akonji's car, opened the door, and attempted to hug and kiss her. Dr. Akonji pushed Mr. Nwokorie away from her. (Exhibit # 1: Akonji Deposition Transcript p. 62.)

Mr. Nwokorie asked Dr. Akonji to accompany him during an out of town business trip, but she refused. (Exhibit # 1: Akonji Deposition Transcript pp. 78-81.) Shortly thereafter, Mr. Nwokorie accused Dr. Akonji of stealing prescription drugs and reported her to the police. Mr. Nwokorie told Dr. Akonji that the police would take her

away in handcuffs, she would go to jail, and she would lose her license. The police investigated the report. Dr. Akonji had done nothing wrong. (Exhibit # 1: Akonji Deposition Transcript p. 80.)

In early 2003, Dr. Akonji confided in James St. Amant, the Upper Cardozo clinic manager, that Mr. Nwokorie was sexually harassing her. Mr. St. Amant advised Dr. Akonji to file a sexual harassment complaint with Unity's management against Mr. Nwokorie. On March 19, 2003, Dr. Akonji filed such a complaint:

"When Roderick had hired me he had actually watched me work on two occasions at D.C. General since I came in through the agency. At one point, he said I was a beautiful, attractive, intelligent and hard working lady he would like to work with. When I was moved to Anacostia pharmacy he would frequently stop during my break time stating, 'I just wanted to see how you are doing, and to see you beautiful face'. When leaving he will try to kiss me and I will withdraw from him. Reacting, he will say 'just give me a hug, it is just a hug, it will not hurt you.'" (Exhibit # 7: Dr. Akonji's sexual harassment complaint – dated March 19, 2003.)

Dr. Akonji's sexual harassment complaint also described how Mr. Nwokorie retaliated against her:

"…once he realized I was not interested in having an affair with him. …he went ahead to write false evaluation about me stating I am not a good pharmacist. …I am traumatized emotionally, physically, and psychologically, and will be most grateful if this matter can be looked into seriously and promptly" (Exhibit # 7: Dr. Akonji's sexual harassment complaint – dated March 19, 2003.)

5

Unity acknowledged receiving Dr. Akonji's March 19, 2003 complaint against Mr. Nwokorie on April 8, 2003. The letter stated that an investigation had taken place and it was signed by Jose Aponte, Interim Director of Human Resources. (Exhibit # 8: Jose Aponte's letter of acknowledgment)

However, in his deposition testimony, Mr. Nwokorie states that he was interviewed by Mr. Aponte but he was never asked about Dr. Akonji's allegations of sexual harassment. (Exhibit # 3: Nwokorie Deposition Transcript pp. 32-35.) According to Mr. Nwokorie, Mr. Aponte merely warned him about Dr. Akonji because she might bring charges against him. (Exhibit # 3: Nwokorie Deposition Transcript pp. 41-43.)

On March 13, 2003, Mr. Aponte had issued a Written Reprimand to Dr. Akonji charging her with insubordination and negligent work performance based primarily on allegations made by Mr. Nwokorie. (Exhibit # 9: Dr. Akonji's Written Reprimand – March 13, 2003.)

On July 9, 2003, Mr. Nwokorie met with Dr. Akonji and completed her annual performance evaluation. (Exhibit # 10: Dr. Akonji's Performance Evaluation – July 9, 2003). While sitting next to her, Mr. Nwokorie put his hand on Dr. Akonji's thigh. Dr. Akonji quickly pushed Mr. Nwokorie's hand away. (Exhibit # 1: Akonji Deposition Transcript pp. 66-73.)

From the month she was hired, February 2002, up to December 2003, Mr. Nwokorie regularly made verbal advances which Dr. Akonji consistently rejected. Mr. Nwokorie invited Dr. Akonji on business trips; he asked her to go out with him on weekends; and, he stated many times that he loved seeing her beautiful face.

6

Around February 2004, Mr. Nwokorie ordered that a significant amount of drugs be removed from Dr. Akonji's pharmacy. This resulted in a shortage of drugs at Dr. Akonji's clinic. Dr. Akonji was blamed for not ordering an adequate amount of drugs and suspended. (Exhibit # 3: Nwokorie Deposition Transcript pp. 35-40.)

On February 6, 2004, Dr. Akonji was terminated. (Exhibit # 11: Termination letter.) The letter was signed by Barbara Hendricks, Director of Human Resources. Ms. Hendricks had been recently hired.

On March 9, 2004, Dr. Akonji visited the EEOC's Washington Field Office and stated her complaint to an investigator. (Exhibit # 12: EEOC complaint.) A written Charge of Discrimination was completed on April 9, 2004.

**STANDARD FOR DETERMINING THIS MOTION:**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine dispute of material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ. P. 56(e); Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 250 (1986); Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. Anderson v. Liberty, 477 U.S. at 248.

All facts and inferences drawn there from, must be viewed in the light most favorable to the non-moving party. Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1288 (D.C. Cir. 1998).

7

**ARGUMENT**

To establish a prima facie case of quid pro quo sexual harassment, Plaintiff must demonstrate that:

    1) she belongs to a protected group;

    2) she was subject to unwelcome sexual harassment;

    3) the harassment complained of was based on her sex; and,

    4) the employee's reaction to harassment complained of affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment.

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

    In Nelson-Cole v. Borg-Warner Sec. Corp., 881 F. Supp. 71 (D.D.C. 1995), the court denied the defendant's motion for summary judgment because the defendant failure to thoroughly investigate the plaintiff's sexual harassment complaint. According to Mr. Nwokorie's deposition testimony, Mr. Aponte, Interim Director of Human Resources, did not ask him about Dr. Akonji's allegations of sexual harassment. Instead, Mr. Aponte advised Mr. Nwokorie to be careful because Dr. Akonji was the type of person who might bring charges. (Exhibit # 10: Nwokorie Deposition Transcript pp. 41-43.)

    When a supervisor's harassment does result in a tangible employment action, the employer will be strictly liable. "No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 765 (1998).

    Dr. Akonji was terminated on February 9, 2004. Dr. Akonji was hired by Mr. Nwokorie in February 2002. Between March 2002 and May 2002, Mr. Nwokorie hugged

Dr. Akonji firmly, grabbed her buttock, and tried to kiss her on three occasions. Each time, Dr. Akonji managed to push Mr. Nwokorie away. Dr. Akonji also rejected Mr. Nwokorie's invitation to accompany him on a business trip.

In May 2002, Mr. Nwokorie prepared a written reprimanded against Dr. Akonji for tardiness and absenteeism. Mr. Nwokorie recommended that her probationary period be extended for another 90 days.

In June 2002, Mr. Nwokorie transferred Dr. Akonji to the D.C. General clinic where his office was located. He told Dr. Akonji that he wanted her to be closer to him. Mr. Nwokorie regularly met Dr. Akonji in the parking lot as she arrived at work in the morning. On one occasion, Mr. Nwokorie approached Dr. Akonji's car, opened the door, and attempted to hug and kiss her. Dr. Akonji pushed Mr. Nwokorie away from her.

Shortly thereafter, Mr. Nwokorie accused Dr. Akonji of stealing narcotics and reported her to the police. Mr. Nwokorie told Dr. Akonji that she would be handcuffed, put in jail, and lose her license.

In March 2003, Dr. Akonji receives a written reprimand from Mr. Aponte accusing her of insubordination and poor job performance. The reprimand is clearly the result of complaints against Dr. Akonji by Mr. Nwokorie.

In March 2003, Dr. Akonji files a sexual harassment complaint against Mr. Nwokorie with Unity's management. Mr. Aponte conducts an investigation in which he interviews Mr. Nwokorie without asking about Dr. Akonji's sexual harassment allegations and then advises Mr. Nwokorie to be careful because Dr. Akonji is the type of person who might file charges.

9

In July 2003, Mr. Nwokorie places his hand on Dr. Akonji's thigh while presenting her annual job performance evaluation. Dr. Akonji quickly pushes Mr. Nwokorie's hand away from her thigh.

As late as December 2003, Mr. Nwokorie continued to ask Dr. Akonji to accompany him on out of town business trips and to go out with him on weekends. Dr. Akonji continued to reject these advances.

Around February 2004, Mr. Nwokorie ordered that a significant amount of drugs be removed from Dr. Akonji's clinic. This created a shortage of drugs at Dr. Akonji's clinic. Dr. Akonji was blamed for the shortage and accused of not ordering an adequate amount of drugs. As a result of Mr. Nwokorie's actions, Dr. Akonji was suspended and then terminated on February 9, 2004. Unity is strictly liable for quid pro quo sexual harassment.

The EEOC guidelines for quid pro quo sexual harassment, 29 C.F.R. §1604.11(a), state:

"Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual…"

To establish a prima facie retaliation case, a plaintiff must show that:

1) she engaged in a protected activity;

2) the employer took an adverse employment action against her; and,

3) a causal connection existed between the protected activity and the asserted

adverse action.

Rochon v Gonzales, 438 F.3d 1211, 1219-20 (D.C. Cir. 2006).

The plaintiff can establish a prima facie retaliation case:

1) Dr. Akonji engaged in a protected activity. Dr. Akonji filed a sexual harassment complaint against Mr. Nwokorie with Unity's management in March 2003.

2) Unity took an adverse employment action against Dr. Akonji by terminating her in February 2004.

3) There is a causal connection between Dr. Akonji sexual harassment complaint and her termination. Around February 2004, Mr. Nwokorie ordered that a significant amount of drugs be removed from Dr. Akonji's pharmacy. Such a thing had not been done before or since. This created a shortage of drugs at Dr. Akonji's clinic. Dr. Akonji was blamed for not ordering an adequate amount of drugs and then terminated on February 9, 2004.

**I.     Plaintiff's Claims of Sexual Harassment are not Time Barred.**

Dr. Akonji visited the EEOC's Washington, D.C. Field Office on March 9, 2004 and stated her complaint to an investigator. A written Charge of Discrimination was completed on April 9, 2004.

She filed her claim within 300 days of the last incident of sexual harassment. On July 9, 2003, Mr. Nwokorie placed his hand on Dr. Akonji's thigh as he was completing her annual job performance evaluation.

**II.    Plaintiff Has Produced Evidence of Sexual Harassment.**

11

Dr. Akonji testified that on three occasions, in March 2002, while she was assigned to the Anacostia clinic, Mr. Nwokorie visited her in the pharmacy during the break period and proceeded to hug her, grab her buttock, and attempted to kiss her.  Approximately a month later, after being assigned to the D.C. General's clinic, Mr. Nwokorie attempted to hug and kiss Dr. Akonji as she arrived in the parking lot.  In July 2003, Mr. Nwokorie placed his hand on Dr. Akonji's thigh as he completed her annual job performance evaluation.  Finally, from the beginning of her employment to the time of her termination, Mr. Nwokorie regularly invited Dr. Akonji to accompany him on business trips and to go out with him on weekends.

**III.    Plaintiff Was Terminated Because She Refused to Have An Affair With Mr. Nwokorie and then Filed a Sexual Harassment Complaint Against Him.**

Mr. Nwokorie was not merely Dr. Akonji supervisor.  He was the Director of Pharmaceutical Services with the authority to hire and fire pharmacists at any of Unity's seven clinics.

In May 2002, when it became clear that Dr. Akonji would not have an affair with him, Mr. Nwokorie began the process of getting her terminated.  Despite the fact he was sexually harassing her, Mr. Nwokorie presented Dr. Akonji with a written reprimand for excessive tardiness and absenteeism.  In addition, Mr. Nwokorie extended Dr. Akonji's probationary period for another 90 days.

In March 2003, Dr. Akonji received another written reprimand when Mr. Nwokorie accused her of insubordination and poor job performance.  Dr. Akonji filed a sexual harassment complaint against Mr. Nwokorie with Unity's management.

Finally, in February 2004, Mr. Nwokorie had a significant amount of drugs removed from Dr. Akonji's pharmacy. When a shortage occurred, Dr. Akonji was blamed for not ordering an adequate amount of drugs and terminated.

## **CONCLUSION**

There are material facts at issue that preclude summary judgment. For these reasons, the court must deny the Defendant's motion for summary judgment.

Respectfully submitted,

_____/s/_____
Bryan A. Chapman , D.C. Bar #439184
Law Office of Bryan A. Chapman
601 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C. 20004
(202) 434-8240

Attorney for the Plaintiff

13