IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HELENE AKONJI ) <br> ) <br> Plaintiff ) <br> ) <br> v. ) <br> ) <br> UNITY HEALTH CARE, INC. ) <br> ) <br> Defendant ) <br> ) | Civil Action No. 05-cv-2101-JDB |

**DEFENDANT UNITY HEALTH CARE'S REPLY IN
SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

In this Reply Memorandum, Defendant Unity Health Care responds to the Opposition submitted by Plaintiff Helene Akonji.

### ARGUMENT

I.  **Plaintiff Asserts That Her Only Timely Claim – Four-Seconds of Contact with Her Thigh – Warrants Bringing this Case Before a Jury.**

Under Title VII, a plaintiff needs to file her claim within 300 days of the last act of harassment. 42 U.S.C. § 2000e-5(e)(1). The last act of harassment alleged in Plaintiff's Complaint occurred on March 17 or 18, 2003. Plaintiff did not file a Charge of Discrimination with the EEOC until April 9, 2004. (Exhibit 2 to Defendant's Motion for Summary Judgment.) Thus, Plaintiff's claim of gender discrimination must be rejected. In addition to being without merit, any claims by Plaintiff of gender discrimination or sexual harassment are time-barred.[1]

---

[1] Any claim Plaintiff maintains under the District of Columbia Human Rights Act is also time-barred. D.C. Code Ann. § 2-1403.04. Every alleged act of gender discrimination occurred more than one year before Plaintiff filed her Complaint.

Plaintiff's Opposition asserts that her claim is not time-barred because Roderick Nwokorie "placed his hand on [her] thigh" on July 9, 2003. This is the only alleged physical act that is not time-barred, and it does not fit within a continuing pattern of harassment. It is a discrete action, which lasted for approximately four seconds, according to Plaintiff's deposition. (See Exhibit 17 to Defendant's Motion for Summary Judgment.) Even if all of the incidents Plaintiff asserts in her Opposition occurred, the alleged pattern of discrimination encompasses only a handful of discrete acts: four occasions in early 2002 when Nwokorie attempted to hug Plaintiff, more than a year without any attempted physical contact, and the July 2003 four-second thigh incident. These isolated incidents do not constitute a pervasive pattern of sexual harassment. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 752 (1998).

## II.  Plaintiff Inaccurately Recounts the Facts of this Case in Order to Bolster her Fruitless Claims.

When alleging in the Opposition that there is evidence of sexual harassment, Plaintiff only points to three occasions in March 2002, one occasion in April 2002, and one occasion in July 2003 of attempted physical contact. The physical contact claims are isolated and not severe enough to constitute sexual harassment, even if true. The 2002 events hinge upon alleged attempts by Nwokorie to hug Plaintiff, which may be socially unacceptable but do not rise to the level of harassment. Notably, Plaintiff never complained to Defendant that Nwokorie had physically grabbed her – only that he had tried to kiss her and said "It's just a hug." Only after she filed suit did the episodes include Nwokorie grabbing her buttocks. If these claims were brought before a jury, their primary inquiry would be whether Nwokorie grabbed Plaintiff's buttocks, as alleged, while attempting to hug her. This conduct was apparently not severe enough for Plaintiff to write down to include in her complaints about Nwokorie. Similarly, the

2

wholly separate 2003 allegation involving four seconds during which Nwokorie's hand brushed against Plaintiff's thigh did not find its way onto paper when Plaintiff was writing her complaints about him to Defendant. This is not the type of pervasive, severe or patently offensive activity that Title VII was drafted to guard against, and it does not warrant a jury trial.

Plaintiff also asserts, without any supporting evidence, that Nwokorie "regularly" sought the company of Plaintiff on business trips and weekends. This is a wholly fabricated claim. During her deposition, Plaintiff only points to one occasion when Nwokorie asked her to accompany him on a business trip.[2] Nwokorie's invitation was an isolated incident, not a persistent set of requests or part of a repeated effort to socialize with Plaintiff outside the workplace. As such, it is certainly not an actionable charge of sexual harassment.

Although Defendant acknowledges that Nwokorie received a written reprimand and took a management training course, this was the result of a joint complaint from male <u>and</u> female Unity employees and did not in any way encompass sexual harassment or gender discrimination. This inaccuracy is only a small component of Plaintiff's Opposition, but should not lead the Court to any false conclusions about Nwokorie's record of sexual harassment; it is nonexistent.

Plaintiff also asserts that Unity officials did not properly investigate Plaintiff's 2003 complaint. This contention either unreasonably assumes that Unity officials could properly piece together her muddled, confusing claims or inaccurately suggests that she offered a coherent account of Nwokorie's alleged harassment in the first place. Her 2003 complaint centered upon her reassignment to different pharmacies based on Unity's staffing needs, did not clarify how

---

[2] Because Plaintiff does not provide any supporting documentation for this claim, we are attaching an Exhibit to this Reply. The portion of Plaintiff's deposition transcript addressing this issue demonstrates that Plaintiff only asserts that Nwokorie invited her on one business trip on one occasion. (See Exhibit 1 to this Reply.) We are aware that new evidence is not typically considered with Reply Memoranda, but felt this evidence was necessary to refute Plaintiff's false, wholly unsupported claim.

3

Nwokorie harassed Plaintiff, and did not explain why Plaintiff felt "traumatized." (See Exhibit 14 to Defendant's Motion for Summary Judgment.) Plaintiff's complaint was simply the second in a series of long-winded, meritless complaints to Human Resources, in which Plaintiff attempted to displace the blame for her shortcomings and punish her superiors for problems she brought upon herself. Plaintiff attempted to discredit Clinic Manager Mary Beth Levin in a similar December 2002 complaint to Human Resources because Levin had reprimanded Plaintiff for her frequent absenteeism and "consistent pattern of tardiness" eight days earlier. (See Exhibit 8 to Defendant's Motion for Summary Judgment.) Her 2003 complaint attempted to deflect the blame from herself to Nwokorie, just as she had done with Levin in 2002.

III.    **Plaintiff Has Conveniently Omitted the Disciplinary Proceedings that Resulted from Multiple Staff Members' Reports of Her Absenteeism, Tardiness, Carelessness and Insubordination, Which Ultimately Resulted in Her Termination.**

It is an amusing fabrication that Nwokorie began a two-year campaign to have Plaintiff terminated, as Plaintiff asserts in her Opposition. While the Opposition takes pains to document, and deny responsibility for, each deserved employment consequence Nwokorie undertook, it fails to refute the facts and evidence presented in Defendant's Motion for Summary Judgment that enumerated how both male and female Unity employees articulated Plaintiff's severe professional shortcomings throughout her two-year tenure.

Plaintiff was not terminated because of anything Nwokorie said or did, but because a female physician, Diana Lapp, and a female manager, Libbie Buchele, recommended to Barbara Hendricks, Director of Human Resources, that Plaintiff's employment be terminated. Buchele's e-mail, which details her "concern about patient safety" since "medication is being lost or wrongly dispensed" due to Plaintiff's irresponsible, potentially dangerous behavior was

4

submitted as Exhibit 9 to Defendant's Motion for Summary Judgment. Buchele sent this e-mail to Hendricks on December 9, 2003. Unity officials used the ensuing weeks to investigate and determine what action should be taken. Plaintiff's protected activity, which allegedly led to her termination, was received by Human Resources on February 1, 2004, well after Unity began the process of termination. (See Exhibit 13 to Defendant's Motion for Summary Judgment.) There is no causal connection between Plaintiff's complaint – or more accurately, Plaintiff's last-ditch effort to blame others for her vast professional shortcomings – and her termination for cause five days later.

Plaintiff's bald assertion that she was terminated because she rebuffed Nwokorie's alleged advances is completely baseless. Before the Court are documented concerns and complaints by other Unity staff members about Plaintiff's attendance, tardiness, dangerous errors, and poor work habits. Clinic Manager Mary Beth Levin issued a Memorandum of Direction, which reprimanded Plaintiff for her pervasive, ongoing tardiness and absenteeism and placed her on Restricted Leave Status. (Exhibit 8 to Defendant's Motion for Summary Judgment.) Levin stated in this Memorandum that she was "deeply concerned about [Plaintiff's] behavior thus far." Buchele composed e-mails to Hendricks and Nwokorie in which she detailed "continuing problems" where Plaintiff gave the wrong medications, including a controlled drug, for the wrong patients and then failed to take the appropriate actions to report these mistakes. (Exhibit 9 to Defendant's Motion for Summary Judgment.)

Contrary to Plaintiff's assertions, Nwokorie neither seized drugs from Plaintiff's pharmacy to make her look bad nor falsely reported her for mishandling controlled drugs; rather, she misappropriated pharmacy inventory and failed to adhere to Unity's procedures. Edward Ayanbiola, Supervising Pharmacist at DC General, reported Plaintiff's mistreatment of

5

controlled substances, including her loss of a large amount of Percocet. (Exhibit 10 to Defendant's Motion for Summary Judgment.) Furthermore, the actions for which Plaintiff was issued a Written Reprimand from Jose Aponte, Interim Director of Human Resources, were not solely reported by Nwokorie, as Plaintiff asserts in her Opposition. Plaintiff was cited both because of another pharmacist's report as well as her own admissions. The other pharmacist reported Plaintiff for the serious, potentially dangerous charge of "refusing" to adhere to a vital Unity policy, which required that pharmacists maintain an inventory of controlled drugs; Plaintiff had previously been warned that such insubordination would result in disciplinary action. (See Exhibit 12 to Defendant's Motion for Summary Judgment.)

## **CONCLUSION**

Defendant has submitted unrefuted evidence that clearly shows Plaintiff to be a deplorable employee who was terminated for cause. She jeopardized patients' health by not arriving to open the pharmacy and fill prescriptions; issuing the wrong medication to the wrong patients on a number of occasions; not accounting for potentially dangerous controlled drugs; not properly safeguarding keys to two Unity pharmacies; and amassing a scandalous record of absenteeism and tardiness. Plaintiff has presented a number of fruitless claims, which lack both evidence and consistency, that accuse Nwokorie of a handful of isolated incidents of low-level verbal and physical conduct, with many months in between with no conduct to complain of harassment. Plaintiff asserts no damages as a result of these alleged incidents; she has not sought therapy, suffered any specific physical or emotional injury, or presented any other claims that would lead to quantifiable damages. Therefore, Defendant Unity Health Care respectfully requests that this Court dismiss the Complaint, with prejudice, and with costs to Defendant.

Respectfully submitted,

SCHNADER HARRISON SEGAL & LEWIS LLP

_____
Benjamin W. Hahn (Bar No. 446270)
2001 Pennsylvania Avenue, N.W., Suite 300
Washington, DC 20006-1825
Telephone: (202) 419-4242
email: bhahn@schnader.com